UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USD○ SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

ERIC WADE CLARK,

                    Petitioner,

      v.

JAMES WALSH,

                    Respondent.

No. 11-CV-44 (KMK)

ORDER ADOPTING R&R

KENNETH M. KARAS, District Judge:

Pro se Petitioner Eric Clark ("Clark") filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, on December 8, 2010, challenging the constitutionality of his 2007 parole revocation. (Pet. ¶¶ 3, 5 (Dkt. No. 1).)

On August 9, 2013, Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation ("R&R"), (*see* Dkt. No. 31), recommending that the Court dismiss Clark's Petition as moot. Clark timely filed objections to the R&R on August 20, 2013. (*See* Dkt. No. 34.) For the reasons stated herein, the Court denies Clark's objections, adopts the R&R in its entirety, and dismisses Clark's Petition.

## I. Background

### A. Factual Background

Although the Court assumes the Parties' general familiarity with the factual and procedural background of this case as set forth in the R&R, the Court will briefly summarize the facts most salient to the Petition.

Clark pleaded guilty to Rape in the Frist Degree, in violation of New York Penal Law § 130.35, and Kidnapping in the Second Degree, in violation of New York Penal Law § 135.20,

on May 17, 1985, and was sentenced to concurrent and indeterminate terms of eight and one-third to twenty-five years' imprisonment. (Resp't's Decl. ¶ 3 (Dkt. No. 19); *id.* Ex. A (Commitment to the State Department of Correctional Services).) Although Clark was released on parole on June 3, 2003, an Administrative Law Judge ("ALJ") recommended, on December 5, 2007, that Clark's parole be revoked because he was found in possession of "children's paraphernalia," namely a child-sized, pink hat decorated with a "Hello Kitty" logo and related cartoon characters, in violation of his parole conditions. (*See* Pet. 1; Resp't's Decl. ¶ 4; *id.* Ex. C (parole conditions) at unnumbered 2; *id.* Ex. L (ALJ Decision); *see also* Resp't's Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't's Mem.") 4–5 (Dkt. No. 18) (describing parole violation).)[1] The Commissioner of the Division of Parole affirmed the ALJ's recommendation and revoked Clark's parole in December 2007; he was remanded for the duration of his sentence. (*See* Resp't's Mem. 2, 6; Resp't's Supplemental Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't's Supplemental Mem.") 1–2 (Dkt. No. 29).) Clark's subsequent Petition for state habeas corpus, challenging the revocation of parole, was denied in New York State Supreme Court, Sullivan County on April 22, 2009, (*see* Resp't's Decl. ¶ 5; *id.* Ex. V (New York State Supreme Court decision)), which denial was affirmed by the New York State Appellate Division, Third Department, on May 27, 2010, *see People ex rel. Clark v. Walsh*, 903 N.Y.S.2d 170 (App. Div. 2010), and which appeal was dismissed by the New York State Court of Appeals on September 21, 2010, *see People ex rel. Clark v. Walsh*, 935 N.E.2d 806 (N.Y. 2010). (*See also* Pet. 3.)

---

[1] This condition stated that Clark was not to be in possession of anything "that could be considered children's paraphernalia" or "may[]be of interest to children." (Rep't's Decl. Ex. C (parole conditions) at unnumbered 2.)

While Clark's sentence expired on May 31, 2013, the New York State Supreme Court,

Westchester County determined that there was probable cause to believe that Clark would be

subject to civil management measures as a sex offender under Article 10 of the New York

Mental Hygiene Law. (Resp't's Supplemental Decl. Ex. HH (consent to remain in custody)

(Dkt. No. 30).) Accordingly, Clark consented to remain incarcerated, rather than be transferred

to a mental health treatment facility, pending a determination of what civil management

measures, if any, he would be subject to. (*See* Resp't's Supplemental Mem. 2; Resp't's

Supplemental Decl. Ex. HH (consent to remain in custody); Pet'r's Answer to Supplemental

Mem. ("Pet'r's Supplemental Mem.") 2 (Dkt. No. 32).) Here, Clark again challenges his parole

revocation.

### B. Procedural Background

Clark timely filed the instant Petition on December 8, 2010. (*See* Dkt. No. 1.) In his

Petition, Clark alleges that his parole revocation was unconstitutionally obtained in the following

six ways:

> (1) The [ALJ's] recommendation . . . that [Clark] be detained was against the
> weight of the evidence and based on insufficient evidence;
> (2) [Clark's] Sixth Amendment right to confront the witnesses against him was
> violated when hearsay statements made by a "store clerk" were admitted at the
> parole revocation hearing;
> (3) The parole condition prohibiting [Clark's] possession of children's
> paraphernalia was unconstitutionally vague;
> (4) [Clark's] right to due process was violated, perhaps through ineffective
> assistance of counsel;
> (5) [T]he ALJ erred in not admitting [Clark's] polygraph examination evidence;
> [and]
> (6) [T]he Appellate Division "erroneously employed a 'substantial evidence'
> standard rather than a preponderance of the evidence" standard.

(Report and Recommendation ("R&R") 2 (Dkt. No. 31) (brackets omitted); *see also* Pet. 5, 8–10;

Resp't's Mem. 10–11.) Respondent filed a response to the Petition on July 7, 2011, (*see* Dkt.

No. 18), to which Clark replied on August 1, 2011, (*see* Dkt. No. 20). Respondent subsequently filed a supplemental response on July 22, 2013, (*see* Dkt. No. 29), to which Clark replied on August 9, 2013, (*see* Dkt. No. 32).

## II. Discussion

### A. Standard of Review

A district court reviewing a report and recommendation deciding a dispositive issue may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1), *see also Tigner v. Lee*, No. 11-CV-4432, 2014 WL 4979697, at *3 (S.D.N.Y. Oct. 3, 2014) (same). If a party submits timely objections to a report and recommendation, as Clark has done here, the district judge will review the parts of the report and recommendation the party objected to under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Tigner*, 2014 WL 4979697, at *3 ("Where a party submits timely objections to an R & R . . . the district court reviews de novo the parts of the R & R to which the party objected."); *see also* Fed. R. Civ. P. 72(b)(3) (same).

### B. Analysis

#### 1. Mootness

A petition is moot, and the Court lacks subject matter jurisdiction, when there is no longer an "actual, ongoing case[] or controvers[y]" at any stage of the litigation. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). For a case or controversy to exist, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted). While a detained convict or parolee's habeas challenge to his

4

underlying conviction will always satisfy the case-or-controversy requirement because of the effects of incarceration, this is not the case after the sentence has expired. *Id.* at 7. Instead, after completion of the sentence, some "concrete and continuing injury other than the now-ended incarceration (or parole)—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Id.*; *see also Swaby v. Ashcroft*, 357 F.3d 156, 160 (2d Cir. 2004) ("Where a defendant has been convicted of a crime, but is no longer incarcerated, the defendant must show some collateral consequence of the conviction, meaning some concrete and continuing injury other than the now-ended incarceration or parole to establish a live case or controversy." (citation and internal quotation marks omitted)).

Judge Smith recommends that the Petition be dismissed as moot because Clark's sentence expired on May 31, 2013, and he has otherwise failed to demonstrate a collateral consequence of his parole revocation. (R&R 3–5.) While the Supreme Court has "been willing to presume that a wrongful criminal conviction has collateral consequences," *Spencer*, 523 U.S. at 8, no such presumption applies here because Clark challenges his parole revocation, rather than his underlying conviction, *id.* at 14 ("We . . . decline to presume that collateral consequences . . . resulted from petitioner's parole revocation."); *Hicks v. Lacy*, Nos. 99-CV-4523, 00-CV-2307, 2003 WL 22510323, at *4 (S.D.N.Y. Nov. 4, 2003) ("A habeas petitioner no longer in custody who is challenging the result of a parole revocation hearing must . . . demonstrate a concrete, ongoing injury-in-fact attributable to his parole revocation."). Clark thus "bears the burden of demonstrating that some concrete and continuing injury continues to flow from the fact of the revocation." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999).

5

In his objections, Clark alleges, in general, that "[t]here is a collateral consequence which continues after the expiration of [his] sentence." (Pet'r's Obj's to R&R ("Pet'r's Obj's") 1 (Dkt. No. 34).)  The Court will proceed by evaluating the two collateral consequences that Clark alleges that he is suffering from: (a) being subject to Article 10 proceedings under the New York Mental Hygiene Law, and (b) being more likely to be found to have a mental abnormality in such proceedings.  The latter allegation is the central contention of Clark's objections, though both are considered de novo.

### 2. Collateral Consequence: Article 10 Proceedings

Clark alleges that a collateral consequence of his parole revocation is that the state has commenced Article 10 proceedings against him under the New York Mental Hygiene Law, (*see* Pet'r's Supplemental Mem. 1), a result of which may be that Clark will be subject to civil management, namely confinement or "strict and intensive supervision," *Mental Hygiene Legal Serv. v. Spitzer*, No. 07-CV-2935, 2007 WL 4115936, at *2 (S.D.N.Y. Nov. 16, 2007), *aff'd sub nom. Mental Hygiene Legal Servs. v. Paterson,* No. 07-CV-5548, 2009 WL 579445 (2d Cir. Mar. 4, 2009); *see also* N.Y. Mental Hyg. Law § 10.03(q).  Clark does not object specifically to his incarceration, to which he consented, while he awaits trial on the issue of whether he should be subject to civil management, but rather challenges the fact that he is subject to Article 10 proceedings at all.  (*See* Pet'r's Supplemental Mem. 2 (noting that his consent "is not relevant [because] either way [he] would be detained as a result of this collateral consequence").

The purpose of Article 10 proceedings is to continue "treatment when . . . incarceration comes to an end" in order to minimize the "danger to society" that "recidivistic sex offenders" present. N.Y. Mental Hyg. Law §§ 10.01(a)–(b). Such proceedings are mandatory for all persons who are "detained sex offenders," namely those who, in relevant part, are:

6

in the care, custody, control, or supervision of an agency with jurisdiction, with
respect to a sex offense or designated felony, in that [each individual is either] . . .

(1) A person who stands convicted of a [qualifying] sex offense . . . and is currently
serving a sentence for, or subject to supervision by the division of parole,
*whether on parole or on post-release supervision*, for such offense or for a
related offense; . . . [or]

(4) A person who stands convicted of a designated felony that was sexually
motivated and committed prior to the effective date of this article[.]

*Id.* § 10.03(g) (emphasis added); *see also Roache v. Att'y Gen.'s Office*, No. 12-CV-1034, 2013

WL 5503151, at *7 (N.D.N.Y. Sept. 30, 2013) ("When a 'detained sex offender,' also referred to

as the 'respondent,' nears release from confinement or parole, a case review team . . . determines

whether that person is a 'sex offender requiring civil management.'" (quoting N.Y. Mental Hyg.

Law §§ 10.05 (e), 10.06(a)); *Mental Hygiene Legal Serv.*, 2007 WL 4115936, at *2 (same).

Those individuals who a jury determines suffer from a mental abnormality are, in turn, subject to

civil management, which, as noted, consists of either confinement or "strict and intensive

supervision," depending on the individual. *Mental Hygiene Legal Serv.*, 2007 WL 4115936, at

*2 (internal quotation marks omitted); *see also* N.Y. Mental Hyg. Law §§ 10.03(q), 10.07(d).

Clark was convicted of qualifying sex offenses, namely rape and kidnapping, and was

therefore a detained sex offender until he completed his sentence on May 31, 2013, whether or

not he was released on parole. *See* N.Y. Mental Hyg. Law § 10.03(p) (defining sex offense as,

inter alia, "any felony defined in article one hundred thirty of the penal law," which includes rape

and kidnapping). Accordingly, because Clark's parole revocation had no impact on the fact that

he is the subject of Article 10 proceedings, the proceedings are not a collateral consequence of

his parole revocation. *Cf. Washington v. Spears*, No. 07-CV-7773, 2009 WL 3459222, at *3

(S.D.N.Y. Oct. 28, 2009) (finding that, because the petitioner's underlying criminal conviction

rendered him ineligible for early release from parole supervision, such ineligibility was not a

7

collateral consequence of the revocation of his parole). Clark does not appear to object to this portion of the R&R, (R&R 4–5), but in any event, on a de novo review, the Court agrees with Judge Smith's reasoning on this point. Accordingly, the Court adopts this portion of the R&R and finds that the fact that Clark is the subject of Article 10 proceedings does not "demonstrate[e] . . . some concrete and continuing injury [that] continues to flow from the fact of the revocation" such that his Petition is not moot. *Probber*, 170 F.3d at 348.

### 3. Collateral Consequence: Mental Abnormality

In his objections to the R&R, Clark suggests that the true collateral consequence of his parole revocation is that he will more likely be found to have a mental abnormality in his Article 10 proceedings.[2] (*See* Pet'r's Obj's 1–2.) As discussed above, under New York Mental Hygiene Law § 10.03(q), a "detained sex offender who suffers from a mental abnormality" is a "sex offender requiring civil management." (internal quotation marks omitted). In other words, a finding of mental abnormality in Article 10 proceedings necessitates civil management. *See Allen v. Bosco*, No. 11-CV-1940, 2012 WL 273073, at *1 (E.D.N.Y. Jan. 27, 2012) ("A sex offender requiring civil management is a detained sex offender who suffers from a mental abnormality." (internal quotation marks omitted)). Clark claims that "being free from . . . [a] parole violation" would be "part of [his] defense" in such proceedings. (Pet'r's Obj's 2.)

Clark's objection is without merit. The *fact* of Clark's parole revocation is not relevant to a jury's mental abnormality determination. It is the conduct that underlies the parole revocation, including Clark's possession of a child's hat, rather than the legal consequences of that conduct,

---

[2] New York Mental Hygiene Law § 10.03(i) defines mental abnormality as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct."

8

that may be relevant to such determination. *See Caldwell v. U.S. Parole Comm'n*, No. 03-CV-

9116, 2005 WL 1153726, at \*4 (S.D.N.Y. Apr. 13, 2005) (report and recommendation) (holding

that any "possible civil disabilities that the petitioner may suffer in the future and that would

keep the controversy alive would result from the 'underlying conduct that formed the basis for

the parole violation,' not from the denial of a revocation hearing") (quoting *Spencer*, 523 U.S. at

13); *cf. Lane v. Williams*, 455 U.S. 624, 632–33 (1982) ("The discretionary decisions that are

made by an employer or a sentencing judge . . . are not governed by the mere presence or

absence of a recorded violation of parole; these decisions . . . are more directly influenced by[]

the underlying conduct that formed the basis for the parole violation. Any disabilities that flow

from whatever respondents did to evoke revocation of parole are not removed—or even

affected—by a District Court order that simply recites that their parole terms are 'void.'").

While Clark's failure to adhere to his parole conditions may suggest that he will have difficulty

adjusting to life as a law-abiding citizen upon release, Clark has not demonstrated how it ensures

that he will be found to have a mental abnormality. Moreover, even if the parole revocation did

have some relevance to a perceived mental abnormality, in light of the other conduct relevant to

such a determination—e.g., Clark's underlying criminal acts, his behavior while incarcerated,

and his apparent demonstration of a desire to live "as a Christian, as a redeemed man of God,"

(Pet'r's Obj's 2)—the Court certainly cannot conclude that such effect would be any more than

speculative. *See Spencer*, 523 U.S. at 16 (finding allegation that parole revocation could be used

in future criminal or civil proceeding was "purely a matter of speculation" because, inter alia, "it

is at least as likely that the conduct underlying the revocation, rather than the revocation

itself . . . would be used"); *cf. Probber*, 170 F.3d at 349 (rejecting collateral consequences as

"too speculative to satisfy the case-or-controversy requirement" because, inter alia, the district

9

court's findings that the defendant committed mail and wire fraud, "would be simply one factor, among many that could be considered" in determining "whether to impose an upward departure" at sentencing; *Ahlers v. Spitzer*, No. 09-CV-10006, 2010 WL 2545962, at *1 (S.D.N.Y. June 24, 2010) (finding there was no "justiciable Article III case or controversy" where a claim, inter alia, "'rest[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))), *aff'd*, 432 F. App'x 42 (2d Cir. 2011). Clark has therefore failed to show that his parole revocation has resulted in a collateral consequence. Accordingly, his Petition is moot.

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Smith's R&R in its entirety. Clark's Petition for Writ of Habeas Corpus is dismissed with prejudice.

As Clark has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000). The Court further certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

10

The Clerk of the Court is respectfully directed to enter a judgment in favor of the Respondent and to close the case.

SO ORDERED.

DATED:      March 31, 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11